MARTHA A. WESTGATE, Appellant, vs. CHRISTIAN J. OHL-
MACHER, Appellee.

*Opinion filed October 25, 1911—Rehearing denied Dec. 6, 1911.*

1. BOUNDARIES—*rule as to boundaries where the original monu-
ment is lost or destroyed.* Where the original monument from
which a plat was surveyed is lost or destroyed, courts will not, up-
on uncertain evidence or the mere conjecture of surveyors, disturb
the boundary lines long established and practically acquiesced in
by the lot owners when improving their lots.

2. SAME—*rule where a tract of land between monuments over-
runs or falls short.* Where a tract of land lying between fixed
monuments is all conveyed in parcels and it overruns or falls short
on actual measurement, the surplus or loss will be divided *pro rata*
among the several lot owners.

APPEAL from the Circuit Court of DeKalb county; the
Hon. MAZZINI SLUSSER, Judge, presiding.

FRED B. SILSBEE, for appellant.

FLOYD E. BROWER, and C. D. ROGERS, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action of ejectment commenced by the ap-
pellant, against the appellee, in the circuit court of DeKalb
county, to recover the possession of a strip of land ten
inches in width in lot 3, block 15, in the original town
(now city) of Sycamore, DeKalb county, Illinois. The
declaration was in the usual form, and three pleas were
filed. The first plea denied possession in the defendant,
the second plea denied that the defendant claimed title to
said premises, and the third plea was a plea of not guilty.
The trial resulted in a verdict and judgment in favor of
the defendant, and the plaintiff has prosecuted this appeal.

The original town of Sycamore was platted in the year
1839. Block 15 contains four lots, and is bounded on the
north by State street, on the east by Maple street, on the

south by Elm street and on the west by Somonauk street. Lots 2 and 3 of block 15 front upon Somonauk street, and according to the original plat each of said lots has a frontage of 160 feet upon Somonauk street. Lot 3 in block 15 in the year 1870 belonged to John Shuld and Nathaniel Richards. On March 24, 1883, they sold the south 30 feet of the north 80 feet of said lot to Whittemore and Bower, and the appellee has acquired title to that part of lot 3 by *mesne* conveyances. On July 31, 1899, Nathaniel Richards, in his own right and as executor of John Shuld, conveyed the south 80 feet of said lot 3 to the Sycamore Hospital Association, and the appellant has acquired title to that portion of lot 3 by *mesne* conveyances, and the strip in question lies upon the boundary line between said tracts. The property of the appellant is improved by a substantial building, as also are the premises of the appellee, and the contention of the appellant is that the appellee is in possession, with his building, of a ten-inch strip of her land. The monument from which the original town of Sycamore was platted was a stone on the south-east corner of the public square, which is now Court House Square. That monument has been destroyed or lost, and the surveyors who testified in this case,—three in number,—were unable to ascertain the location of the monument from which the original survey was made at the time the original town was platted, hence this controversy. At the north-west corner of block 15, adjoining State and Somonauk streets, there stands a brick building, from the north-west corner of which the re-surveys, which the appellant claims show title in her to said ten-inch strip, were started. If, therefore, the north-west corner of said building corresponds with the north-west corner of said block 15 as originally platted, according to the theory of the appellant she is entitled to recover in this case, otherwise she is not.

Three separate surveys were made by three surveyors with a view of testifying in this case, and each of said

surveyors admitted he was unable to state whether or not the point from which he started his re-survey,—that is, the north-west corner of the building standing upon the north-west corner of block 15,—corresponds with the corner of said block as it was originally surveyed. It is manifest, therefore, that these re-surveys are unreliable. It also appears from two of said re-surveys of block 15 that the west front of said block 15 overruns, the re-surveys showing a frontage of block 15 upon Somonauk street between the north-west corner of said brick building and the sidewalk upon Elm street to be 321 feet and 9½ inches, instead of 320 feet, according to the original survey and plat. It is obvious if three surveyors who were upon the ground were unable to determine the proper location of the north-west corner of block 15 as said block was originally platted, that it is not reasonable to expect that this court can determine the proper location of the north-west corner of said block 15 from the testimony of said surveyors. We think, therefore, that the appellant has failed in this court, as she failed in the trial court, to establish where the true boundary line, according to the original plat, lies between her land and the land of the appellee or that the appellee is in possession of a portion of her land. It is clear, in any event, that the appellee is not in possession of any more land than he is entitled to under his deed. His deed calls for 30 feet frontage upon Somonauk street, and the evidence shows that he is only in possession of 29 feet and a fraction. It is also clear if the proper line of Elm street is at the north line of the sidewalk on that street, which seems very probable from the evidence, that the appellant is in possession of more land than she is entitled to by her deed. The most that can be said of this case is that it is one of a disputed boundary line, and that it is impossible, from the evidence, to tell where the true line is between appellant's and appellee's holdings, by reason of the fact

that the original monument from which the town was platted has been lost or destroyed.

In case of a disputed boundary line in a town, city or village, where the monument from which the town, city or village was platted is lost or destroyed, the courts ought not to disturb boundary lines between lot owners which have been acquiesced in for years and upon which the lot owners have erected improvements, upon uncertain evidence, or upon the mere conjecture of a surveyor or a number of surveyors who have made a re-survey of the town, city or village, and who admit upon the witness stand, as was admitted by the surveyors who re-surveyed block 15, that they did not know and could not tell whether the point from which the re-survey started corresponded with the point from which the original survey was made. It is undoubtedly true that the determination of the location of a disputed boundary line is usually a question of fact, and manifestly such is the case here; and where the monument from which the original plat was made is lost or destroyed, the supposed boundary lines practically acquiesced in by the owners of lots in the municipality, as evidenced by their conduct in building houses, business blocks, fences, etc., should, in a case of doubt, control. Mr. Justice Cooley, in *Diehl* v. *Zanger,* 39 Mich. 601, in a case upon the facts very much like the case at bar, on page 604 said: "This litigation grows out of a new survey recently made by the city surveyor. This officer, after searching for the original stakes and finding none, has proceeded to take measurements according to the original plat and to drive stakes of his own. According to this survey the practical location of the whole plat is wrong and all the lines should be moved between four and five feet to the east. * * * When an officer proposes thus dogmatically to unsettle the landmarks of a whole community, it becomes of the highest importance to know what has been the basis of his opinion. The record in this case fails to give any explanation, but the

reasonable inference is that the surveyor has reached his conclusion by first satisfying himself what was the initial point of Mr. Campau's survey, and then proceeding to survey out the plat anew with that as his starting point. Of course, by this method, if no mistake is made, there is no difficulty in ascertaining with positive certainty where, according to Mr. Campau's plat, the original street and lot lines ought to have been located, and apparently the surveyor has assumed that that was all he had to do. Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity."

We think the statements of Judge Cooley applicable to the case at bar. To permit a re-location of the lines dividing the property fronting upon Somonauk street (which would involve the adjoining blocks and streets) would be to unsettle the title and boundary lines of the entire part of the city of Sycamore in which block 15 is located. We are well satisfied from the evidence found in this record that the appellant wholly failed to make out a case; that even if it were conceded that the north-west corner of the brick building upon the north-west corner of block 15 corresponds with the location of that corner of said block according to its original location upon the plat, the west front of that block overruns to such an extent that the appellant now has more land in her possession than her deed calls for; and it has been held in this State that where a tract of land lying between monuments is all conveyed in parcels and it overruns or falls short, the surplus or loss will

be divided *pro rata* among the several lot owners.  *Ely* v. *Brown,* 183 Ill. 575.

Finding no reversible error in this record the judgment of the circuit court will be affirmed.

*Judgment affirmed.*